FILED
2015 Feb-17  PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRANDY BAILEY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **5:14-cv-282-LSC** |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### Memorandum of Opinion

The plaintiff, Brandy Bailey ("Bailey"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Bailey timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## I.    INTRODUCTION

Bailey was twenty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 144–45.) Bailey has a twelfth-grade education with a

certificate of completion. (Tr. at 56.) Bailey alleges that her disability began on December 14, 2011, and that her disability is due to intellectual disabilities, anxiety, and depression. (Tr. at 84, 144.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in substantial gainful activity, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision

depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Bailey meets the non-disability requirements for a period of disability, DIB, and SSI and was insured through the date of his decision. (Tr. at 21.) She further determined that Bailey has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Bailey's mild to borderline mental retardation was a severe impairment. (*Id.*) The ALJ next determined that Bailey's impairments neither met nor were medically equal to any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 28.)

Because Bailey could not be considered "disabled" based solely on whether her impairments met or medically equaled those listed in 20 C.F.R. Part 404, the ALJ next assessed the effect of Bailey's alleged impairments on her RFC. The ALJ found that

Bailey had an RFC that:

> enabled her to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions; she is limited to jobs involving infrequent and well explained workplace changes; she is limited to casual, nonintensive interaction with members of the general public; and she can concentrate/remain on task for two hours at a time, sufficient to complete an eight-hour workday.

(Tr. at 24.) The ALJ determined that Bailey was unable to perform past relevant work.

(Tr. at 26.) The ALJ determined that Bailey was a "younger individual" at the onset date of the alleged disability, that she had a high school education, and that transferability of Bailey's skills was not at issue because her past relevant work was unskilled. (*Id.*) Relying on the Medical-Vocation Guidelines and a vocational expert's ("VE's") opinion, the ALJ found that there were a significant number of jobs in the national economy that Bailey was capable of performing, such as garment steamer, rug cleaner, and hand presser. (Tr. at 27.) Consequently, the ALJ concluded that Bailey was not "under a disability" as defined in the Social Security Act through the date of the decision. (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520,

1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Bailey alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she argues that the ALJ erred in finding that Bailey's intellectual functioning did not meet or equal Listing 12.05B or 12.05C for Mental Retardation.[1] Second, Bailey argues that the ALJ showed improper bias. The Court considers each of these arguments in turn.

### A. Meeting or Equaling Listing 12.05 Mental Retardation

Bailey contends that her impairment meets or equals the listed impairment 12.05B or 12.05C for mental retardation and therefore she is disabled. The plaintiff has

---

[1] On August 1, 2013, the SSA changed the terminology in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 from "mental retardation" to "intellectual disability." The SSA has noted that the change in terminology does not affect analysis of intellectual disabilities under the regulations. *See* 78 Fed. Reg. 46,499, at 46,500 (Aug. 1, 2013).

the burden of proving that an impairment either meets or equals a listed impairment. *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). "For a claimant to show that his impairment matches a listing, it must meet all the of the specified criteria. An impairment that manifests only some of the specified criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Under Listing 12.05, the plaintiff must prove mental retardation, which is defined as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.; *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."). Under Listings 12.05B and 12.05C, a plaintiff establishes metal retardation if the plaintiff meets the preceding diagnostic description *and* has (1) "[a] valid verbal, performance, or full scale IQ of 59 or less," or (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, §§ 12.05B and 12.05C.

First, Bailey asserts that the ALJ improperly disregarded the results of a mental evaluation by Dr. Alan Blotcky. Dr. Blotcky examined Bailey on September 20, 2012, and concluded that Bailey had a verbal comprehension index of 56, a perceptual reasoning index of 60, a working memory index of 60, a processing speed of 68, and a full scale IQ of 55. (Tr. at 246.) Consequently, Blotcky diagnosed Bailey with mild mental retardation. Bailey argues that, had Dr. Blotcky's findings been properly considered, she would have meet the criteria found in Listing 12.05B for mental retardation. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05B (requiring an IQ score of 59 or less).

However, the ALJ chose to give no weight to Dr. Blotcky's examination results, and instead assigned great weight to the findings of Dr. Jack Bentley. Dr. Bentley provided a consultative examination to Bailey on January 12, 2010, and concluded that Bailey had a verbal score of 65, a performance IQ score of 72, and a full range IQ score of 65.[2] (Tr. at 251.) Dr. Bentley examined Bailey a second time on April 9, 2012, and diagnosed her as having borderline to mild mental retardation. (Tr. at 237.)

This Court finds that substantial evidence supports the ALJ's decision to

---

[2] Apparently there is a typographical error in Dr. Bentley's report. His summary assessment lists Bailey's performance IQ score as 62, yet the line-item summary of her scores lists the performance IQ score as 72. Regardless, the score does not fall below 59, and thus is still analyzed under Listing 12.05C.

disregard findings in Dr. Blotcky's report in favor of those in Dr. Bentley's report. As a one-time consultative examiner, Dr. Blotcky's findings were not entitled to any special deference. *See* 20 C.F.R. §§ 404.1527, 416.927. In choosing to give preference to Dr. Bentley's score, the ALJ provided explicit and detailed reasons. The ALJ noted that Dr. Bentley examined Bailey twice over a period of three years, while Dr. Blotcky examined Bailey only once. (Tr. at 23.) The ALJ further stated that the results of the IQ examination provided by Dr. Bentley were more consistent with the record as a whole. For example, despite administering an IQ test that resulted in a score of 55, Dr. Blotcky stated in his report that Bailey "demonstrated logical and orderly thinking," possessed "concrete and simplistic" thought processes, and had judgment that was "grossly intact." (Tr. at 246.)

In deciding that Bailey did not meet the IQ score requirements of 12.05B, the ALJ also noted that, even with an IQ score of 55, Bailey had not demonstrated the necessary deficits in adaptive functioning since her low IQ score was inconsistent with her daily activities and behavior. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with the other evidence on record on the claimant's daily activities and behavior"). As the ALJ noted, the record indicates that

Bailey is able to do laundry, care for her son, watch television, drive a car, shop in stores, and care for her basic personal needs independently. (Tr. at 194–208.) The Eleventh Circuit has found that similar daily activities support a finding that a claimant does not have the necessary adaptive functioning deficits to meet a 12.05 listing. *See Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) ("The record supports the finding by the ALJ that the required limitations to adaptive functioning were not present, despite [claimant's] low IQ score. [Claimant] is able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars. [Claimant's] daily activities include church attendance, television viewing, and walking in the mall.").

Bailey's work history also provides substantial evidence to find that the Blotcky-administered IQ score is inconsistent with Bailey's apparent adaptive functioning. Bailey held a job until as late as 2009, and her reasons for leaving past jobs have never been related to her intellectual impairments. Bailey left her job as a kitchen worker at a hospital because the hospital closed, and later stopped work at a gas station because she became pregnant. (Tr. at 40–41.); *see also Harris v. Comm'r of Soc. Sec.*, 505 F. App'x 874, 876 (11th Cir. 2013) (affirming an ALJ's determination that, despite a qualifying IQ score under Listing 12.05, claimant failed to show deficits in adaptive

functioning when he had previously worked as a dish washer, food server, prep cook, and furniture deliverer, and had not left any of those jobs due to his intellectual impairment).

In addition, Bailey's argument that the ALJ erred in not finding her disabled under 12.05C fails because there is substantial evidence to support the ALJ's determination that Bailey lacked "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C. A finding of a "significant and additional work-related limitation of function" is co-extensive with the finding of a "severe impairment" under step two of the sequential analysis. *See* 65 Fed. Reg. 50,746, at 50,772 (Aug. 21, 2000) (stating that "we have always intended the phrase [additional and significant work-related limitation of function] to mean that the other impairment is a 'severe' impairment"). Here, the ALJ determined that borderline to mild mental retardation was Bailey's only "severe" impairment, meaning that Bailey's other alleged impairments did not have more than a minimal effect on her ability to work. Furthermore, the ALJ explicitly considered Bailey's anxiety when deciding that Bailey lacked an additional significant work-related limitation, reasoning that the impairment has been well-controlled by medication and has never required Bailey to seek formal

mental health treatment. (Tr. at 23.)

## B.    Bias on the Part of the ALJ

Bailey also asserts that the ALJ showed bias when considering the examination report prepared by Dr. Blotcky, as the ALJ noted that Dr. Blotcky was hired by Bailey's counsel to administer an additional IQ test and mental examination, and thus was not an impartial medical source. The Eleventh Circuit has held that a claimant is entitled to both a full and fair hearing and that an ALJ shall not conduct a hearing if he or she is prejudiced with respect to a party to a case or has any interest in the outcome of the pending matter. *Miles*, 84 F.3d at 1401 (citing 20 C.F.R. § 404.940). The ALJ plays a crucial rule in the disability review process and "not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him." *Id*. The ALJ's impartiality is integral to the system. *Id*.

However, ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975). These presumptions can be overcome only by demonstration of either a conflict of interest of the ALJ or another specific reason for disqualification. *McClure*, 457 U.S. at 195. Furthermore, the

Supreme Court has explained:

> Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, even if a hearing is "less than totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985). A showing of prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him, or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id*. at 1540. The main concern is whether there are any evidentiary gaps which would result in unfairness. *Id*.

Even if the ALJ's consideration of the fact that Bailey was referred to Dr. Blotcky by her attorney was inappropriate, there is no indication that it resulted in any prejudice. The ALJ stated numerous other reasons for why she gave little weight to Dr. Blotcky's opinion: Dr. Blotcky's findings were inconsistent with other medical evidence on record, Dr. Blotcky was merely a one-time examining medical source, and Dr. Blotcky's assessment was contradicted by Bailey's daily activities and semi-skilled work history. These reasons constitute "substantial evidence" for discrediting Dr.

Blotcky's findings. Moreover, the ALJ's consideration of Dr. Blotcky's status as a attorney-referred medical source did not require reference to evidence outside the record. *Cf. Miles*, 84 F.3d at 1399–401 (finding that an ALJ demonstrated bias when the ALJ, relying on extrajudicial knowledge, discredited a medical source's opinion because the medical source regularly provided favorable examination reports for claimants).

Finally, Bailey did not raise the issue of bias before the Social Security Appeals Council.[3] Claims of bias on the part of an ALJ must be raised at the earliest opportunity; otherwise, such claims are considered waived. *See* 20 C.F.R. §§ 404.940, 416.1440 (stating that, when a claimant suspects bias on the part of an ALJ, the claimant "must notify the administrative law judge [or appeals council] at [the] earliest opportunity"); *Austin v. Astrue*, 2:09-cv-1096-SRW, 2010 WL 2868217, at *9 (M.D. Ala. July 19, 2010) ("The plaintiff here . . . did not seek disqualification of the ALJ at the earliest opportunity. By failing to do so, he has waived the issue of ALJ bias."); *see also Miles*, 84 F.3d at 1400 (stating that a claimant must notify either the ALJ in question or the appeals council "at the earliest opportunity" whenever the

---

[3] Bailey's application for review merely states that her reason for requesting a review of the ALJ's determination is that "[c]laimant is disabled and entitled to disability benefits under the Social Security Act." (Tr. at 15.) Nowhere does the application mention bias on behalf of the ALJ.

claimant has reason to believe the ALJ is biased).

## IV.   CONCLUSION

Upon review of the administrative record, and considering all of Ms. Bailey's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.

A separate Order will be entered.

Done this 17th day of February 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[177822]